IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01897-RM-MJW

STEPHEN THENE SPARKS,

Plaintiff,

v.

TEJINDER SINGH, Physician Assistant,
LISA HANKS, Nurse,
TED LAWRENCE, Physician Assistant/Acting Health Service Administrator,
MICHAEL AASEN, MD,
TOM CLEMENTS, C.D.O.C. Director,
STEVE HARTLEY, Warden, and
COLORADO HEALTH PARTNERS, C.H.P.,

Defendants.

---

**RECOMMENDATION ON
MOTION TO DISMISS (Docket No. 30)
AND
DEFENDANT CHP'S MOTION TO DISMISS (Docket No. 35)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 17) issued by Judge Christine M. Arguello on January 18, 2013.  This matter was reassigned to Judge Raymond P. Moore on May 1, 2013 (Docket No. 40).

**PLAINTIFF'S ALLEGATIONS**

*Pro se* plaintiff Stephen Sparks asserts the following in his Prisoner Complaint (Docket No. 1) and Amended Prisoner Complaint[1] (Docket No. 7).  On February 1,

---

[1] On January 16, 2013, Judge Babcock entered an Order (Docket No. 15) dismissing plaintiff's claim against Defendant Robbie Quick.  Judge Babcock allowed plaintiff's claims against the remaining defendants to go forward.

2

2012, plaintiff, suffering from flu symptoms and a sore throat, was examined by Defendant Singh, a physician assistant at the Arkansas Valley Correctional Facility ("AVCF").  Singh prescribed plaintiff "Motrin, Priolsec, Guaifenesin, and Bactrim."  That night, plaintiff "experienced severe vomiting of blood and stomach acid" and red spots began to appear on his palms, face, and trunk.

The next morning, after forcing plaintiff to "sit in the freezing cold, outside waiting area," plaintiff was examined by Defendant Hanks.  Plaintiff reported that his tongue, lips, and throat were swollen.  Plaintiff was administered a shot of Rocephin and directed to take the medicine prescribed to him the previous day.

On February 3, 2012, plaintiff awoke to discover that his condition had worsened.  Plaintiff "could not stand" and the "bottom of [his] feet were in extreme pain."  Later that day, plaintiff was seen by Laura Gribbe and directed to continue taking the prescribed medications.

On the morning of February 4, 2012, plaintiff was examined by Defendant Lawrence, the physician assistant who was on-call at that time.  Lawrence ordered a urine analysis and put plaintiff on an I.V.  The analysis indicated that plaintiff may be diabetic.  Plaintiff was given an insulin shot and eventually taken to Saint Mary Corwin hospital.

At the hospital, plaintiff was diagnosed with "Maculopapular rash/Palpable pupradiff dx includ[ing] Erythema multiform, drug reaction and STS (Stevens-Johnson Sydrome)" as the result of an allergic reaction to "Sulfamethoxazloe (Bactrim)."  The reaction caused plaintiff's "mouth to peel, and blistering of the throat, blistering of the mucus membranes, patchy red rash in palms and on back, the loosening of [plaintiff's]

3

toe and finger nails, and thin layer of skin to peel" on the bottom of plaintiff's feet. Plaintiff was given "Morphene [sic], Benadrly [sic], Zofran, Lactated Ringer, and Prednisone and eye cream to stop the sulfur poisoning."

Plaintiff remained at the hospital until February 10, 2012, whereupon he was transferred to the Colorado Department of Corrections infirmary at the Territorial Correctional Facility.  Prior to his transfer, plaintiff's condition worsened.  Plaintiff experienced "rapid weight lost [sic], extreme pain," bleeding lips, and swollen tongue, among other symptoms.  Furthermore, plaintiff "could only drink liquids with a straw."

Between February 10, 2012 and February 14, 2012, plaintiff experienced further medical issues, including the loss of toenails, extreme pain, loss of skin on the soles of his feet, and loss of approximately 40 pounds of body weight.  Finally, on February 15, 2013, plaintiff was returned to the Arkansas Valley Correctional Facility.

Plaintiff continued to experience various medical issues.  On February 22, 2012, plaintiff complained to Lawrence of pain in his legs.  This pain persisted until plaintiff had a follow-up medical appointment with Defendant Dr. Michael Aasen.[2]  Dr. Aasen ordered an ultrasound which revealed "new blood clots found in [plaintiff's] right leg, and existing clots in [plaintiff's] left leg [had] grown throughout [his] entire left thigh."  Plaintiff was sent back to Saint Mary Corwin hospital to determine the cause of the new clots. On April 4, 2012, plaintiff was told he has anti-phospholipid syndrome, also known as Hughes Syndrome, which was caused by the sulfur poisoning.

[2] The court notes, that as of the date of this recommendation, there is a previous recommendation (Docket No. 54) pending regarding the dismissal of Defendant Aasen for lack of service.

4

In addition to the clotting issue, plaintiff also discovered, after reviewing his medical records on February 29, 2012, that he had been diagnosed with diabetes for a year prior to being informed of the diagnosis.  Plaintiff details the medical issues he suffered as the result of not being treated for diabetes for that period of time.

Plaintiff makes two claims under 42 U.S.C. § 1983.  Plaintiff's Claim One is an Eighth Amendment claim for deliberate indifference related to his sulfur poisoning, i.e., his allergic reaction to Bactrim.  Plaintiff's Claim Two is an Eighth Amendment claim for deliberate indifference related to the delay in his treatment for diabetes.

## PENDING MOTIONS

Now before the court for a report and recommendation are**:** (I) Motion to Dismiss by Defendants Tejinder Singh, Lisa Hanks, Ted Lawrence, Tom Clements, and Steve Hartley (hereinafter the "individual defendants") (Docket No. 30); and (II) Defendant CHP's Motion to Dismiss (Docket No. 35).

The court has carefully considered the Prisoner Complaint (Docket No. 1), the Amended Prisoner Complaint (Docket No. 7), the motions to dismiss (Docket Nos. 30 & 35), plaintiff's responses (Docket Nos. 44 & 52), and CHP's reply (Docket No. 45).  In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings of fact, conclusions of law, and recommendations.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

5

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do . . . ."  Id. at 555 (citations

omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from

conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)

(quoting Twombly, 550 U.S. at 570).

    The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope

of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'"  Khalik v. United Air Lines, 671 F.3d

1188, 1191 (10th Cir. 2012).  The court has further "noted that '[t]he nature and

specificity of the allegations required to state a plausible claim will vary based on

context.'"  Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a middle

ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

Plaintiff is proceeding pro se. The court, therefore, reviews his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers). However, a pro se litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. Associated Gen. Contractors of Cal., Inc. v. Cal. State Council

of Carpenters, 459 U.S. 519, 526 (1983).  See Whitney v. New Mexico, 113 F.3d 1170,

1173-74 (10th Cir. 1997) (stating a court may not supply additional factual allegations to

round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v.

City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (stating a court may not

construct arguments or theories for the plaintiff in the absence of any discussion of

those issues).  The plaintiff's pro se status does not entitle him to application of different

rules.  Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

## I.  Motion to Dismiss by the Individual Defendants

The individual defendants make the following arguments in their Motion to

Dismiss (Docket No. 30): (1) Defendants Hartley and Clements are immune from liability

for damages in their official capacities; (2) plaintiff's claims against Defendants Hartley

and Clements in their individual capacities should be dismissed for failure to allege

personal participation; (3) plaintiff has failed to state an Eight Amendment deliberate

indifference claim; and (4) the individual defendants are entitled to qualified immunity in

their individual capacities.  The court will address the individual defendants' arguments

in the order presented.

## 1. Immunity of Defendants Hartley and Clements in Their Official Capacities

First, the individual defendants argue that Defendant Hartley and Defendant

Clements are immune from liability for damages in their official capacities.

"It is well established that under the Eleventh Amendment, sovereign immunity

prohibits federal courts from entertaining suits against states brought by their own

citizens or citizens of another state without their consent."  Hunt v. Colo. Dep't of Corr.,

8

271 F. App'x 778, 780 (10th Cir. 2008) (citation omitted).  Furthermore, to state a claim

for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured

by the Constitution and laws of the United States, and must show that the alleged

depravation was committed by a *person* acting under color of state law." West v.

Atkins, 487 U.S. 42, 48 (1988) (emphasis added).   State officials acting in their official

capacities are not "persons" acting under color of state law for § 1983 purposes.

McLaughlin v. Bd. of Trs. of State Colls. of Colo., 215 F.3d 1168, 1172 (10th Cir. 2000).

Accordingly, the court finds that plaintiff's claims should be dismissed against

Defendant Hartley and Defendant Clements to the extent plaintiff seeks money

damages against Defendant Hartley and Defendant Clements in their official capacities.

**2. Failure to Allege Personal Participation of Defendants Hartley and Clements**

Second, the individual defendants argue that plaintiff's individual capacity claims

should be dismissed for failure to allege personal participation on the part of Defendant

Hartley and Defendant Clements.

Under § 1983, when a defendant is sued in his or her individual capacity, the

complaint must allege facts that show the defendant personally participated in the

alleged violation.  See Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997); Jenkins

v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[P]laintiff must show the defendant

personally participated in the alleged violation, and conclusory allegations are not

sufficient to state a constitutional violation."); Bennett v. Passic, 545 F.2d 1260, 1262-63

(10th Cir. 1976).  In addition, a defendant may not be held liable under § 1983 merely

because of his or her supervisory position.  Grimsley v. MacKay, 93 F.3d 676, 679 (10th

Cir. 1996).  Rather, there must be an affirmative link between the alleged constitutional

9

violation and the defendant's own participation or failure to supervise.  Butler v. City of
Norman, 992 F.2d 1053, 1055 (10th Cir. 1993).

Plaintiff's Prisoner Complaint (Docket No. 1) alleges that Defendant Clements, as
the director of the Colorado Department of Corrections ("CDOC"), "is legally responsible
for the overall operation of the Department of Corrections [including AVCF]."  Docket
No. 1, at 3.  Similarly, plaintiff alleges that Defendant Hartley, as the warden of AVCF,
"is legally responsible for the overall safety and welfare of offenders and staff."  Docket
No. 1, at 3.  There are no further allegations concerning Defendant Clements and
Defendant Hartley in plaintiff's Prisoner Complaint (Docket No. 1).  Plaintiff's Amended
Prisoner Complaint (Docket No. 7) alleges that Defendant Clements and Defendant
Hartley knew, or should have known, of the alleged constitutional violations.  See
Docket No. 7, at 1-2.

The court finds that plaintiff's allegations are insufficient to show that Defendant
Clements and Defendant Hartley personally participated in the alleged constitutional
violations.  Plaintiff's allegations that Defendant Clements and Defendant Hartley are
"legally responsible" for the actions which take place in the institutions they supervise
are insufficient to state personal participation; Defendant Clements and Defendant
Hartley cannot be held liable because of their supervisory positions.  Furthermore,
plaintiff's allegations that Defendant Clements and Defendant Hartley knew, or should
have know, of the alleged constitutional violations are conclusory in nature.  Plaintiff
does not provide specific allegations as to an affirmative link between Defendant
Clements or Defendant Hartley and the alleged constitutional violations.  Accordingly,
the court finds that plaintiff has failed to allege personal participation on the part of

10

Defendant Clements and Defendant Hartley, and therefore claims against Defendant

Clements and Defendant Hartley in their individual capacities should be dismissed.

## 3. Failure to State an Eighth Amendment Claim for Deliberate Indifference

Next, the individual defendants argue that plaintiff has failed to state an Eighth

Amendment claim for deliberate indifference.

A prison official's deliberate indifference to an inmate's serious medical needs

violates the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In

order to state an Eighth Amendment claim, "a prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs."  Self

v. Crum, 439 F.3d 1227, 1230 (10th Cir.) (quotation omitted).  "A prison official's

deliberate indifference to an inmate's serious medical needs is a violation of the Eighth

Amendment's prohibition against cruel and unusual punishment . . . .  The test for

constitutional liability of prison officials 'involves both an objective and a subjective

component.'"  Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  As the Tenth Circuit

has explained:

> to properly set forth an Eighth Amendment claim on which relief may be
> granted, [the prisoner] must set forth facts demonstrating [1] that his
> alleged medical need . . . was sufficiently serious to meet the objective
> element of the deliberate indifference test, *and* [2] that the Defendants'
> delay in meeting that need caused him substantial harm.  Finally, to meet
> the subjective element of the deliberate indifference test, [the prisoner]
> must allege facts supporting an inference [3] that Defendants knew about
> and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

The individual defendants contend that there "is no allegation that any of the

Defendants had a culpable state of mind with respect to [plaintiff's] medical needs."  In

11

other words, the individual defendants argue that plaintiff's allegations fail to satisfy the

subjective component of the deliberate indifference test.

"The subjective component is akin to recklessness in the criminal law, where, to

act recklessly, a person must consciously disregard a substantial risk of serious harm."

Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal quotation marks omitted).

As such, the subjective component is not satisfied "unless the [prison] official knows and

disregards an excessive risk to inmate health or safety; the official must both be aware

of the facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825,

837 (1994).  A difference in medical opinion regarding treatment does not amount to a

constitutional violation.  See Thompson v. Gibson, 289 F.3d 1218, 122 (10th Cir. 2002).

Moreover, "a complaint that a physician has been negligent in diagnosing or treating a

medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment."  Estelle, 429 U.S. at 106.

The individual defendants contend that many of plaintiff's allegations are

insufficient, in that they "focus on a desire for different and better treatment."  The court

agrees with the individual defendants that a large portion of plaintiff's allegations

implicate plaintiff's desire for different treatment.  "The prisoner's right is to medical care

- not to the type or scope of medical care which he personally desires.  A difference of

opinion between a physician and a patient does not give rise to a claim under § 1983."

Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968).

As to plaintiff's allegations which go beyond his desire for better or different

treatment, the individual defendants argue that the allegations only implicate negligence

12

on the part of defendants and do not rise to the level of recklessness.

In plaintiff's Claim One, which involves his allergic reaction to Bactrim, plaintiff alleges that Defendant Singh "knew or should have known that medications he prescribed can cause violent reactions," yet he failed "to take reasonable steps to examine [plaintiff] and diagnose the symptoms of a drug reaction."  Docket No. 1, at 5. Plaintiff further alleges that if Defendant Singh and his staff had simply "looked at the markings on [plaintiff's] hands, face and trunk . . . he would have seen that [plaintiff] was having a violent reaction to the medications he prescribed."  Id.  Plaintiff further alleges that Singh and his staff were biased against him and treated him as a nuisance.  Id.

The court finds that plaintiff's Claim One allegations fail to meet the subjective component of the deliberate indifference test.  Plaintiff's non-conclusory allegations clearly only rise to the level of negligence on the part of Defendant Singh and his staff. In essence, plaintiff claims that if Defendant Singh and his staff had more competently/carefully examined plaintiff, they would have realized that plaintiff was having an allergic reaction, and plaintiff would have received treatment for the reaction sooner than he did.  Plaintiff thus does not allege that Defendant Singh and his staff were aware of the reaction and chose to disregard it, i.e., they acted recklessly.  Rather, plaintiff alleges "that a competent doctor looking at [his] symptoms would have known that [an allergic reaction was] possible and taken additional steps to confirm such a diagnosis."  Self, 439 F.3d at 1233.  Such "negligent failure to provide medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."  Id. (further noting that the court's subjective inquiry is limited "to consideration of the doctor's knowledge at the time he prescribed treatment for the

13

symptoms presented, not to the ultimate treatment necessary"). As such, the court

must find that plaintiff has failed to allege an Eighth Amendment claim for deliberate

indifference as to Claim One.

Plaintiff's Claim Two alleges that plaintiff was diagnosed with diabetes but not

told of his condition until a year after the diagnosis was made. Docket No. 1, at 10.

Plaintiff alleges that Defendants Singh, Lawrence, and Aasen were aware of plaintiff's

diagnosis. Id. During this one year period, plaintiff alleges that he received no

treatment, such as insulin shots, for his diabetes. Id. Plaintiff alleges that the delay in

treatment caused or contributed to a chronic blood disorder. Id.

The court finds that plaintiff's Claim Two meets the subjective component of the

deliberate indifference test. Plaintiff alleges that Defendants Singh, Lawrence, and

Aasen knew of a significant risk to plaintiff (diabetes) and disregarded that risk by

providing no treatment. In other words, plaintiff alleges that Defendants Singh,

Lawrence, and Aasen consciously disregarded of substantial risk of serious harm to

plaintiff. As such, the court finds that plaintiff has met the subjective component as to

Claim Two.[3]

**4. Qualified Immunity of the Individual Defendants in their Individual Capacities**

Finally, the individual defendants argue that, to the extent plaintiff's claims are

made against the individual defendants in their individual capacities, they are entitled to

qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for

---

[3] The court makes no findings as to the objective component of the deliberate
indifference test as the individual defendants made no argument in that regard.

14

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).

Here, the individual defendants assert that plaintiff meets neither prong. They contend that plaintiff has failed to demonstrate that there was a violation of a constitutional right.  However, as found above, plaintiff has at least, at this early stage, adequately stated a constitutional violation so as to withstand the individual defendants' motion to dismiss.

15

Regardless, the individual defendants further assert that they are entitled to qualified immunity because they allegedly did not violate clearly-established law. "To overcome a claim of qualified immunity, a plaintiff who has adequately pled a constitutional violation must also show that the contours of that violation were 'clearly established' at the time of the vents at issue . . . .  Normally, a plaintiff shows that a right was 'clearly established' by pointing to binding precedent from the Supreme Court of 10th Circuit recognizing the right in the particular circumstances presented . . . .  However, there are circumstances where the contours of the right are so obvious that reference to a body of similar caselaw is unnecessary."  Smith v. Leyba, 2009 WL 564270, *4 (D. Colo. Mar. 5, 2009) (citations omitted); see Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'") (citations omitted).

Here, there can be little doubt that the right allegedly violated, namely, a prisoner's Eighth Amendment right to be free from deliberate indifference to a serious medical need, was "clearly established" such that a reasonable person in the individual defendants' position would have known that his or her conduct violated that right.  While the factual circumstances in the myriad of Tenth Circuit case law concerning these rights may not be identical to those presented by the plaintiff

here, they are sufficiently similar that a reasonable prison official could very well

recognize the contours of his or her obligations toward the plaintiff in this case.

"[O]fficials can still be on notice that their conduct violates established law even in

novel factual circumstances."  Hope, 536 U.S. at 741.  Therefore, the court finds

that the individual defendants are not entitled to qualified immunity at this time.

## II. Defendant CHP's Motion to Dismiss

In its motion to dismiss (Docket No. 35), CHP puts forth several arguments, all of

which relate to its contention that it is not a proper party to this action.  CHP states that

its only connection with plaintiff's claims is the fact that it provides insurance coverage

for the various medical professionals named by plaintiff, and in effect, supervises those

individuals.  As such, CHP argues that plaintiff has necessarily failed to state a claim

upon which relief may be granted as against CHP.  In response, plaintiff argues that

because CHP has knowledge of violations committed by the medical professions it

insures, and chooses to continue providing insurance for them, it is liable for the

violations.  Plaintiff further argues that CHP is a state actor.

Plaintiff's Prisoner Complaint (Docket No. 1) includes a single sentence regarding

CHP, namely that CHP "is the insurance and bond holder of the medical defendants."

Docket No. 1, at 3.  Plaintiff's Amended Prisoner Complaint (Docket No. 7) states that

CHP continues "to employ and provide insurance coverage for the medical defendants

through lack of supervision despite the many civil complaints filed against the

defendants, i.e., Tejinder Singh.  Creating an attitude of complacency acquiescing [to]

the violation of Plaintiffs [sic] Eight [sic] and Fourteenth Amendments [rights] in failing to

treat him."  Docket No. 7, at 2.

17

The court agrees with CHP that plaintiff has failed to state a claim against it. Plaintiff alleges that CHP is liable for the actions of the medical professionals by virtue of the fact that it provides insurance coverage for those individuals.  Although it is not entirely clear, plaintiff appears to argue that providing insurance coverage alone is enough to make an insurer liable for the actions of the insured, i.e., providing insurance coverage to state actors in turn makes the insurer a state actor.  Plaintiff also argues that the insurer/insured relationship creates liability by placing the insurer in a supervisory position.  Either way, plaintiff's arguments are without merit.

"[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate the action was taken 'under color of state law.'" Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995).  Courts that have faced arguments similar to plaintiff's have found that an insurance provider is not acting under color of state law by virtue of providing insurance for individual state actors.  See Al-Bari v. Schofield, 2013 WL 1943016, at *2 (M.D. Tenn. May 9, 2013); Butler v. Onyeje, 2011 WL 6181931, at *4 (E.D. Cal. Dec. 13, 2011) (adopted recommendation); Dixon v. Sutton, 2011 WL 1770295, at *7-8 (M.D. Ala. May 9, 2011); Damron v. O'Hanlon, 2010 WL 4823075, at *6 (S.D.W.Va. Oct. 12, 2010) (adopted recommendation) Twitty v. Frey, 2009 WL 2032075, at *2 (E.D.Mo. July 9, 2009).  Furthermore, plaintiff cites to no cases supporting such a contention.  In addition, the court finds that the act of providing insurance does not meet any of the "acting under color of state law" tests utilized by the Tenth Circuit.  See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1126 (10th Cir. 2000) (detailing the four tests).  Accordingly, the court finds that plaintiff has not met

his burden to plead that CHP was acting under color of state law.

As to plaintiff's supervisor argument, even if an insurance provider could be said to be in a supervisory position, plaintiff must establish a "deliberate, intentional act by the supervisor to violate constitutional rights." Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010). Plaintiff makes no such allegations in his complaints.

Accordingly, the court finds that plaintiff has failed to state a claim upon which relief may be granted as against CHP, and therefore CHP should be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss by Defendants Tejinder Singh, Lisa Hanks, Ted Lawrence, Tom Clements, and Steve Hartley (Docket No. 30) be **GRANTED IN PART AND DENIED IN PART**. The motion should be **GRANTED** insofar as: (1) plaintiff's claims should be dismissed against Defendant Hartley and Defendant Clements to the extent plaintiff seeks money damages against them in their official capacities; (2) plaintiff's claims against Defendant Hartley and Defendant Clements should be dismissed to the extent plaintiff's claims are made against them in their individual capacities; and (3) plaintiff's Claim One should be dismissed in its entirety. The motion should be **DENIED** in all other respects. It is further

**RECOMMENDED** that Defendant CHP's Motion to Dismiss (Docket No. 35) be **GRANTED** and Defendant CHP be dismissed with prejudice from this case.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

19

and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  July 12, 2013                     s/ Michael J. Watanabe
       Denver, Colorado                  Michael J. Watanabe
                                         United States Magistrate Judge